IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA MOREALLI, )<br>        Plaintiff, )<br>        v. )<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>        Defendant. ) | Civil Action No. 08-356 Erie |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

      Plaintiff, Christina Morealli (hereinafter "Plaintiff"), commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq,* and § 1381 *et seq.* Plaintiff filed applications for DIB and SSI on October 20, 2006, alleging that she was disabled since March 3, 2006 due to a back injury (Administrative Record, hereinafter "AR", 16; 66-68; 73). Her applications were denied and she requested a hearing before an administrative law judge ("ALJ") (AR 51; 53-57). Following a hearing held April 23, 2008, the ALJ rendered a decision dated June 16, 2008 finding that the Plaintiff was not entitled to a period of disability or disability insurance, and was not eligible for SSI benefits (AR 16-24). Plaintiff's request for review by the Appeals Council was denied (AR 4-6), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, the Defendant's motion will be denied and the Plaintiff's motion will be granted only to the extent she seeks a remand for further consideration.

**I. B**ACKGROUND

      Plaintiff was 49 years old on the date of the ALJ's decision (AR 23). She is a high school graduate with past work experience as a part-time fast food manager and a light-duty

housekeeper (AR 74; 78).

Plaintiff has been treated by Anthony Ruffa, D.O., since January 12, 2005 for routine medical care (AR 136-158). On December 14, 2005, Plaintiff complained of lower back pain (AR 152). Physical examination was essentially unremarkable, and Dr. Ruffa recommended chiropractic therapy (AR 152).

An MRI of the Plaintiff's lumbar spine dated February 23, 2006 showed spondylosis with disc space narrowing primarily at the lumbosacral junction (AR 144). A repeat MRI on March 9, 2006 revealed right subarticular and medial foraminal disk protrusion at L4-5 and L5-S1, as well as a right foraminal annular tear at L3-4, and shallow scoliosis (AR 142).

Plaintiff returned to Dr. Ruffa on March 28, 2006 and continued to complain of lower back pain with occasional radiculopathy (AR 140). Dr. Ruffa reviewed the Plaintiff's MRI's and noted that she had two protruded discs with "bulging discs throughout her lumbar spine" with the "potential for radiculopathy as well" (AR 140). She was diagnosed with low back pain, referred to physical therapy and prescribed Lodine and Flexeril (AR 140).

At her initial physical therapy evaluation on March 30, 2006, Plaintiff complained of low back pain radiating down into her buttock and hip areas, ranging from a two to an eight out of ten at times (AR 134). She reported increased pain with bending, twisting, maintaining positions, lifting and housework (AR 134). Plaintiff reported a history of falling down the stairs at work in December 2004 but that chiropractic therapy had relieved her pain after several visits (AR 134). Her symptoms progressively worsened and she returned to the chiropractor in January 2006 (AR 134). On physical examination, Jamie L. Wolfe, PT, found Plaintiff had a decreased range of motion of her lumbar spine, but that her rehabilitation potential was "good" (AR 134-135).

Plaintiff continued a course of physical therapy treatment for approximately twenty-one visits (AR 119-133). On April 25, 2006, the Plaintiff reported improvement in her mobility and decreased pain (AR 128). She reported that her pain at its worst was a four or five out of ten and at times she was pain free (AR 128).

On May 1, 2006, the Plaintiff reported to Dr. Ruffa that her back pain had improved forty to fifty percent with physical therapy (AR 139). She was diagnosed with low back pain and was to continue physical therapy (AR 139). On May 5, 2006, Plaintiff reported to Ms. Wolfe that she

had been able to increase her activity level and had walked for thirty minutes around her neighborhood the previous day, and was able to walk twice a day at home (AR 127). She reported being more "pain free" and Ms. Wolfe found that her range of motion had increased (AR 127). By May 15, 2006, Plaintiff reported that she was returning to karate class and on May 25, 2006, Plaintiff reported that it had "[gone] well" (AR 124; 126). She indicated she had no problem working out and was pain free during class (AR 124). Plaintiff did state, however, that her pain seemed to be "stuck" at about a three out of ten (AR 124).

Plaintiff was discharged from physical therapy on June 6, 2006 after having "met all goals" (AR 119). Ms. Wolfe reported that she had normal range of lumbar spine motion and full lower extremity strength (AR 119). Her reported pain level had decreased to a range of zero to three out of ten (AR 119).

Plaintiff returned to Dr. Ruffa on June 12, 2006 for follow-up and reported that her back pain had improved, but not one hundred percent (AR 138). Although Dr. Ruffa found she was able to function appropriately, Plaintiff stated that she did not want to return to work because lifting laundry aggravated her back (AR 138). She declined steroid injection therapy at that time (AR 138). On physical examination, Plaintiff had a stable gait and full muscle strength in all extremities, there were no gross motor or sensory deficits and no atrophy, clubbing, inflammation or cyanosis in her extremities (AR 138). She was diagnosed with stable low back pain and was to continue to stay off work (AR 138).

On October 10, 2006, Plaintiff continued to complain of low back pain, claiming that she could not do much work or lifting (AR 137). Her physical examination was unremarkable and she was assessed with, *inter alia*, low back pain with herniated disk (AR 137).

Plaintiff completed a Daily Activities Questionnaire on November 8, 2006 and reported that she had to rely on others to lift and carry items such as laundry and groceries, and sometimes needed help getting dressed, getting out of the bathtub, getting out of the car and arising from a chair or sofa (AR 97). She was able to prepare meals, but unable to perform household chores (AR 98). Plaintiff claimed she suffered from pain "[a]ll the time" and was incapable of lifting, bending, twisting, stretching, standing or walking for longer than fifteen to twenty minutes on a hard surface or sitting longer than twenty to thirty minutes (AR 101; 103).

Plaintiff was treated by Paul Carnes, M.D., a pain management specialist, from January 2007 to January 2008 (AR 167-244). Dr. Carnes administered a lumbar epidural steroid injection on January 16, 2007 (AR 244).

On February 2, 2007, Alfred M. Mancini, M.D., a state agency reviewing physician, reviewed the medical evidence of record and concluded that the Plaintiff could occasionally lift ten pounds and frequently lift and/or carry "slightly less than" ten pounds; stand and/or walk for at least two hours in an 8-hour workday; sit for about six hours in an 8-hour workday; and had no limitations in her pushing and/or pulling abilities (AR 160). Dr. Mancini further concluded that posturally, the Plaintiff was limited to occasionally balancing, stooping, kneeling, crouching and crawling, and could occasionally use ramps and climb stairs, but was precluded from climbing ladders, ropes or scaffolds (AR 161).

Plaintiff received another lumbar epidural steroid injection from Dr. Carnes on April 3, 2007 and on August 16, 2007, he administered a lumbar facet block (AR 243-244). On September 26, 2007 Dr. Carnes conducted a radiofrequency ablation of the Plaintiff's right-sided lower lumbar area (AR 193).[1]

Plaintiff returned to Dr. Carnes on January 28, 2008, and he conducted a radiofrequency ablation of the Plaintiff's left lumbar medial branch nerves (AR 178). Dr. Carnes noted that the Plaintiff stated that following the September procedure, she had "good" pain relief and had been able to walk better (AR 178). Following the procedure in January, Dr. Carnes reported the Plaintiff had "excellent pain relief" (AR 178).

On April 18, 2008, Dr. Carnes completed a Medical Report summarizing his treatment of the Plaintiff since January 2007 (AR 165-166). Dr. Carnes indicated that her prognosis was "guarded" (AR 165). He concluded that she was unable to return to work as a housekeeper because it involved "too much bending/lifting" but had a "limited ability" to return to work as a cashier (AR 165-166). He further concluded, however, that back pain prevented her from working full time (AR 166).

---

[1] Lumbar radiofrequency ablation "is the application of heat generated by radiant energy to kill or stun nerve cells in the lower back where pain originates." *Williams v. Astrue*, 2009 WL 791327 at *4 n.5 (S.D.Ind. 2009) (citing *Stedman's Medical Dictionary* at 3, 1121, 1622-23).

Plaintiff testified at the administrative hearing that she lived with her husband and two children (AR 251). Plaintiff further testified that she worked approximately 25 to 30 hours per week as a housekeeper for the monastery but resigned because she was in "too much pain" (AR 253; 265). She left her part-time job at the fast food restaurant because the position was converted to a full-time position and she did not want to work full-time (AR 254). Plaintiff claimed that she was unable to work because her back pain prevented her from sitting for more than twenty to thirty minutes and she had to frequently lay down and apply ice to her back (AR 254-255; 257; 263). She acknowledged that her pain had decreased with treatment, but claimed that the benefits were only temporary (AR 255-256; 259).

Plaintiff testified that she did not lift and carry items at the grocery store and was unable to lift grocery bags (AR 259-260). She further testified that she regularly drove her daughter to extracurricular activities located two to five miles from her home (AR 251). She performed volunteer work at her church and for her daughter's band and orchestra, attended monthly band club meetings, made afghans and read (AR 260-263). She testified that she went to restaurants and attended her daughter's concerts, but claimed an inability to remain seated throughout (AR 263). Plaintiff claimed that after engaging in these activities, she was forced to restrict her activities the next day due to increased back pain (AR 264).

The ALJ asked the vocational expert to assume an individual of the same age, education and work experience as Plaintiff, who was able to perform light and/or sedentary work, but needed to sit or stand every 30 minutes and only engage in occasional bending (AR 267-268). The vocational expert testified that such an individual could perform the light and sedentary job of a cashier, and the sedentary job of a telemarketer (AR 268-269). Finally, the vocational expert testified that there would be no jobs for an individual who needed to lie down for approximately twenty-five percent of the workday (AR 270).

Following the hearing, the ALJ issued a written decision finding the Plaintiff was not entitled to a period of disability, DIB or SSI within the meaning of the Social Security Act (AR 16-24). The Appeals Council denied her request for review (AR 4-6) and she subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) *with* 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that the Plaintiff met the disability insured status requirements of the Act through December 31, 2010 (AR 16). SSI does not have an insured status requirement.

To be eligible for DIB or SSI, the burden is on the claimant to show that she has a medically determinable physical or mental impairment (or a combination of such impairments) which is so severe that she is unable to pursue substantial gainful employment currently existing in the national economy. 42 U.S.C. § 423(d)(1)(A) and (d)(2)(A). The Commissioner uses a five-step sequential evaluation process to determine whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The process proceeds as follows:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical

> impairment, the [Commissioner] determines (3) whether the
> impairment is equivalent to an impairment listed by the
> [Commissioner] as creating a presumption of disability. *Bowen*,
> 482 U.S. at 141. If it is not, the claimant bears the burden of
> showing (4) that the impairment prevents him from performing the
> work that he has performed in the past. *Id.* If the claimant satisfies
> this burden, the [Commissioner] must grant the claimant benefits
> unless the [Commissioner] can demonstrate (5) that there are jobs
> in the national economy that the claimant can perform. *Ferguson
> v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ resolved Plaintiff's case at the fifth step. At step two, the ALJ found that the Plaintiff's degenerative disc disease of the lumbar spine was a severe impairment, but determined at step three that she did not meet a listing (AR 18-19). At step four, the ALJ concluded that she retained the residual functional capacity to perform sedentary work with a sit/stand option every 30 minutes and involving only occasional bending (AR 19). At the final step, the ALJ found that the Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 23-24). The ALJ additionally determined that her statements with regard to her symptoms were not fully credible (AR 21). Again, I must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff argues that the ALJ erred in rejecting Dr. Carnes' opinion that she was precluded from working full-time due to pain. "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3rd Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3rd Cir. 1999)) (citations omitted); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3rd Cir. 2008). An ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3rd Cir. 1988) (holding that "the medical judgment of a treating physician can be rejected only on the basis of contradictory medical evidence" not "simply by having the administrative law judge make a different judgment"). A treating physician's opinion is given controlling weight where the opinion is "well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record. ..." 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2); *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3rd Cir. 2001). Finally, an ALJ's decision to reject or discount a treating physician's opinion must be explained in his or her decision. *See Sykes v. Apfel*, 228 F.3d 259, 266 (3rd Cir. 2000) ("Where the Secretary is faces with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence.").

      Here, the ALJ declined to accord Dr. Carnes' opinion controlling weight based, in part, upon his conclusion that it was contradicted by other medical evidence of record (AR 22). As the ALJ noted, Plaintiff's physical therapy records on discharge showed that the Plaintiff's range of motion, reflexes and gait were within normal limits, and there were no significant motor, sensory or neurological deficits found (AR 22). The Plaintiff's physical therapist reported that the Plaintiff met all therapy goals and exhibited a normal range of lumbar spine motion and full lower extremity strength (AR 119). Dr. Ruffa's physical examinations were essentially unremarkable (AR 21; 137-138) and he reported that she was able to function appropriately and that her back pain was stable (AR 138).

      The ALJ further examined Dr. Carnes' underlying records in evaluating his opinion, and concluded that his records were completely devoid of any findings that would support the strict limitations imposed (AR 22). The ALJ also relied on upon the fact that the Plaintiff was only seen every few months by Dr. Carnes and reported "good" relief following treatment (AR 22). This is entirely proper, since the regulations provide that in determining whether a treating physician's opinion is entitled to more weight, an ALJ is to consider, *inter alia*, the frequency, nature and extent of the claimant's treatment relationship. *See* 20 C.F.R. 404.1527(d)(2)-(6).

      Finally, the state agency physician's opinion that the Plaintiff could perform sedentary work with only occasional bending supports the ALJ's rejection of the functional restrictions imposed by Dr. Carnes. The ALJ found that the state agency physician's opinion was more consistent with the objective medical evidence, but found her slightly more limited in that she needed a sit/stand option (AR 22). It is long-settled that the findings of a non-examining physician may be substantial evidence defeating contrary opinions. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3rd Cir. 1991) (ALJ did not err in rejecting opinion of treating physician in favor

of opinions from state agency physicians were treating physicians' opinions were conclusory and unsupported by the medical evidence). Based on the above, I find that substantial evidence supports the ALJ's rejection of the functional limitations imposed by Dr. Carnes.

Plaintiff next challenges the ALJ's credibility determination, claiming that the ALJ failed to adequately evaluate her subjective complaints of pain. *See* Plaintiff's Brief p. 16. An ALJ must consider subjective complaints by the claimant and evaluate the extent to which those complaints are supported or contradicted by the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1529(a). Subjective complaints must be seriously considered, whether or not they are fully confirmed by the objective medical evidence. *See Smith v. Califano*, 637 F.2d 968 (3rd Cir. 1981). The ALJ as the finder of fact can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record. *Baerga v. Richardson,* 500 F.2d 309, 312 (3rd Cir. 1974). The ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference by this Court. *See Van Horn v. Schweiker*, 717 F2d 871, 873 (3rd Cir. 1983).

Here, the ALJ pointed to the following medical evidence in rejecting the extent of the Plaintiff's claimed limitations: physical therapy progress notes demonstrating an improved range of motion upon treatment and a decrease in pain; an increase in mobility which enabled the Plaintiff to return to her karate class with no pain; and Dr. Ruffa's progress notes reflecting improvement in her condition following physical therapy and a finding that her low back pain was "stable" (AR 20-21). He further observed that the Plaintiff obtained pain relief following radiofrequency ablation therapy performed by Dr. Carnes and was able to walk better (AR 21).

In addition to the medical evidence, the ALJ concluded that the level of the Plaintiff's activities belied her allegations of disabling pain (AR 21). For example, he noted that she was able to drive her daughter to her activities, read, perform volunteer work for her church, take care of her nephew for a couple of hours and go to restaurants (AR 21). The ALJ appropriately recognized that such activities were not the equivalent of full-time work, but found her participation in such activities was somewhat inconsistent with her allegations of disabling pain (AR 21).

Plaintiff further argues that the ALJ's credibility finding is "fatally flawed" because he

9

failed to take into account the Plaintiff's work history, citing, *inter alia*, *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3rd Cir. 1979) (noting that the claimant's testimony as to his capabilities was entitled to substantial credibility based on his long work history and the fact that it was supported by the medical evidence). Courts have remanded cases where the ALJ failed to consider a claimant's long and productive work history in connection with his or her credibility determination where the subjective symptoms are supported by the medical evidence or the claimant made attempts to return to work. *See e.g.*, *Reider v. Apfel*, 115 F. Supp. 2d 496, 507 (M.D.Pa. 2000) (finding that ALJ failed to properly address claimant's work history and post-accident unsuccessful work attempts); *Sidberry v. Bowen*, 662 F. Supp. 2d 1037, 1039-40 (E.D.Pa. 1986) (ALJ erred in ignoring claimant's work history and efforts to hold down a job); *accord*, *Corley v. Barnhart*, 102 Fed. Appx. 752, 755 (3rd Cir. 2004) (refusing to remand a case based upon the ALJ's failure to have commented on the claimant's work history, noting that in the cases that were remanded "the claimant not only had a long and productive work history, but also showed evidence of severe impairments or attempted to return to work, and neither of these circumstances exist here").

       The ALJ did, in fact, consider the Plaintiff's work history, albeit not in the manner the Plaintiff would have preferred. Instead of according her heightened credibility based upon her work history, the ALJ found that because the Plaintiff had always worked only part-time jobs and had low earnings ("not over 10,000 in any recent year"), this called into question her motivation to work full-time (AR 21). An ALJ may appropriately consider a claimant's low earnings as reflecting adversely on a claimant's credibility. *See e.g., Stewart v. Astrue*, 2009 WL 537538 at *15 (W.D.Mo. 2009) (holding that the claimant's low earnings record supported the ALJ's credibility determination in that "a review of the claimant's earnings record over the past 15 years revealed consistently low wages which indicates low motivation to work"); *Walker v. Astrue,* 2009 WL 2252737 at *18 (E.D.N.Y. 2009) (holding that the ALJ could "correctly" discount the claimant's credibility based on, *inter alia*, her poor work history where the claimant had worked part-time three days a week earning $200 per month from 1989 to 2002); *Mannisi v. Astrue*, 2008 WL 441767 at *21 (W.D.Mo. 2008) (holding that "[a]n ALJ may discount a claimant's credibility based upon her poor work record" where the ALJ considered the claimant's

low earning history and noted she had only four years with earnings over $10,000).

The ALJ's findings in this regard are supported by the Plaintiff's earnings record (AR 58-59; 64), as well as her own testimony at the administrative hearing. When questioned as to why the Plaintiff stopped working as a fast food manager, she testified as follows:

> Q. Why did you leave that job?
>
> A. Because I was working part time, and they were going to make the position full time, and I didn't want to work full time.

(AR 254). I find no error in the manner in which the ALJ utilized the Plaintiff's prior work history in his overall credibility analysis.

Finally, the Plaintiff contends that the ALJ erred in failing to recognize that the case presented a "borderline age situation" by virtue of the Plaintiff being 5 ½ months shy of her fiftieth birthday. The Commissioner's regulations state that the age categories should not be mechanically applied in a borderline situation. 20 C.F.R. §§ 404.1563(b); 416.963(b). Rather, those regulations provide, in pertinent part:

> [w]e will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. §§ 404.1563(b); 416.963(b). If a borderline analysis could potentially change the ALJ's determination of disability, remand is appropriate. *See Kane v. Heckler*, 776 F.2d 1130, 1132-33 (3rd Cir. 1985).

District courts within the Third Circuit have recognized that there is no "'brightline rule' for what constitutes a 'borderline situation.'" *Davis v. Astrue*, 2009 WL 3241853 at *7 (W.D.Pa. 2009). In concluding that seven months presented a borderline age situation, the district court in *Istik v. Astrue,* 2009 WL 382503 (W.D.Pa. 2009) observed:

> No judicially crafted rules or regulations exist to determine when a borderline age situation is present. Without much guidance, district courts within the Third Circuit have yielded different conclusions on this issue. *See Ludvico v. Astrue*, No. 08-322, 2008 WL 5134938, *11 (W.D.Pa. Dec. 5, 2008) ("Nine months appears to represent the outer perimeter of what constitutes a borderline

> case in the District Courts of the Third Circuit.") (citing *Rosado v. Bowen*, 1986 WL 15004, *4 (E.D.Pa. Dec. 30, 1986)); *Bennett v. Sullivan*, No. 89-1907, 1990 WL 122912, *5 (E.D.Pa. Aug. 21, 1990) ("several courts have concluded that, where a person is within one year of the next age category, individualized consideration must be given to whether he should be treated as a member of the next age category in determining the extent of his vocational adaptability.") (citing *Ford v. Heckler*, 572 F.Supp.2d 992, 994 (E.D.N.C. 1983); *Hillard v. Schweiker*, 563 F. Supp. 99 (D.Mont. 1983)).
>
> Numerous courts in the Third Circuit, including our appellate court, have found borderline situations when the plaintiff is only a couple of months away from the next age category. *See Lucas v. Barnhart*, 184 Fed.Appx.204 (3d Cir. 2006) (holding that 106 days is borderline); *Kane*, 776 F.2d at 1134 (finding 48 days clearly creates a borderline situation); *Ludivico*, 2008 WL 5134938 at *11 (finding five months constitutes a borderline situation); *Bennett*, 1990 WL 122912 at *5 (holding ten months was borderline); *Williams v. Bowen*, 1987 WL 9148, *2 (E.D.Pa. April 6, 1987) (seven months considered borderline).
>
> Moreover, this line of reasoning is not limited to decisions rendered within our Circuit. *See Cox v. Apfel*, 1998 WL 864118, at *4 (10th Cir. Dec. 14, 1998) ("because plaintiff was within six months of the age category ... at the time the ALJ issued his decision, he erred by not addressing whether plaintiff was of borderline age before choosing a rule from the grids."); *Fosha v. Barnhart*, 372 F.Supp.2d 948, 955 (S.D.Tex.2005) (ALJ must considered [sic] a borderline situation when Plaintiff is seven months away from the next age category); *Smith v. Barnhart*, 2002 WL 126107, at *24 (N.D.Ill. Jan. 31, 2002) (finding six months is a borderline situation); *Tousignant v. Apfel*, 1998 WL 142415, at *5 (N.D.Ill. Mar. 26, 1998) (ten months is borderline); *Howard v. Bowen*, 638 F.Supp. 68, 72 n. 4 (D.D.C. 1986) (eight months is borderline).
>
> In the instant case, at the time the ALJ determined that Plaintiff was not disabled, Plaintiff was only seven months shy of his fiftieth-fifth birthday, at which time he would be considered a "person of advanced age" under the Grid instead of a "person approaching advanced age." As noted *supra*, courts have not determined a brightline rule for the determination of a borderline situation. However, the Court finds that there is extensive persuasive authority to find that the ALJ should have given consideration to the borderline situation presented in this case.

*Istik*, 2009 WL 382503at *4.

The outer limit of what constitutes a "borderline age situation" remains unsettled and it is unnecessary in this case to opine what that age might be. Here, however, given the case law

12

summarized above, it is my view that the ALJ should have given consideration to the Plaintiff's borderline age status. For instance, the ALJ did not make a finding as to transferability of skills, holding that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills ... ." (AR 23). The ALJ cited to Rule 201.21, which provides that a "younger individual" who is a high school graduate with a history of skilled or semi-skilled work that is not transferable is considered "not disabled." *See* 20 C.F.R. Pt. 404 Sub.Pt. P, Appx. 2 Table No. 1, § 202.21. When utilizing the "closely approaching advanced age" category however, if the Plaintiff's job skills were found to be not transferable, Rule 201.14 would direct a finding of "disabled." *See* 20 C.F.R. Pt. 404 Sub.Pt. P, Appx. 2 Table No. 1, § 202.14. This matter shall therefore be remanded to the Commissioner for further consideration.

## IV. CONCLUSION

Based upon the foregoing reasons, the Plaintiff's motion for summary judgment will be granted only to the extent she seeks a remand for further consideration by the Commissioner. The Commissioner's motion for summary judgment shall be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA MORELLI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-356 Erie |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **ORDER**

AND NOW, this 23rd day of February, 2010, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 7] is GRANTED only to the extent she seeks a remand for further consideration by the Commissioner.  The case is hereby REMANDED to the Commissioner of Social Security for further proceedings consistent with the accompanying Memorandum Opinion.  IT IS FURTHER ORDERED that the Defendant's Motion for Summary Judgment [Doc. No. 9] is DENIED.

The clerk is hereby directed to mark the case closed.


                                                                 s/ Sean J. McLaughlin
                                                                 United States District Judge


cm: All parties of record. ____